UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NATIONAL AUTOMOTIVE PARTS ASSOCIATION LLC AND GENUINE PARTS COMPANY | § § § § | |
| Plaintiffs | § § | CASE NO. __4:22-cv-181_____ |
| v. | § § § | |
| 4212 TWT LLC and BRAD OSBORNE | § § § | |
| Defendants | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs National Automotive Parts Association LLC (NAPA) and Genuine Parts Company (GPC) (collectively, Plaintiffs) file this complaint against Defendants 4212 TWT LLC (TWT) and Brad Osborne (Osborne) (collectively, Defendants) and state as follows:

### PARTIES

1.  Plaintiff NAPA is a limited liability company organized under the laws of Georgia.

2.  Plaintiff GPC is a Georgia corporation, the sole member of NAPA, and is the exclusive licensee of all NAPA trademarks.  GPC's headquarters and principal place of business is in Atlanta, Georgia.

3.  Defendant TWT is a Texas limited liability company.  TWT operates an automotive repair shop business at 3120 Alta Mere Drive, Fort Worth, Texas 76116 and may be served with process by and through its president, Brad Osborne at 4212 Twilight

Trail, Fort Worth, Texas 76126 or by and through its registered agent, Cacciotti Legal, at 5900 Lovell Avenue, Suite A, Fort Worth, Texas 76107.

4.     Defendant Osborne is the owner and president of TWT.  Osborne is a resident of Texas and may be served at 4212 Twilight Trail, Fort Worth, Texas 76126.

## JURISDICTION AND VENUE

5.     This case is a civil action arising under the Trademark Act of 1946, 15 USC § 1051, *et seq*.  This Court has original subject matter jurisdiction of this action pursuant to 15 USC § 1121; 28 USC §§ 1331.

6.     This Court has supplemental jurisdiction over GPC's claim for breach of contract against TWT pursuant to 28 USC § 1367.  TWT's failure to pay invoices issued by GPC arises out of the same case or controversy that led to termination of TWT's NAPA AutoCare participant agreement and subsequent infringement of NAPA's trademark rights.

7.     This Court has personal jurisdiction over Defendants as Defendants are residents of Texas and regularly conduct business in Texas through a principal place of business located in Texas.

8.     Venue is proper in this district under 28 USC §§ 1391(b)-(c).

## FACTUAL BACKGROUND

9.      For more than 80 years, the NAPA® brand has been associated with the highest quality of automotive parts and services.  Through the efforts of NAPA and GPC, NAPA® auto parts are distributed and sold nationwide under the NAPA® brand using NAPA's federally registered trademarks.

10.   NAPA and GPC have invested and continue to invest significant resources in cultivating and preserving the distinctiveness and prestige of the NAPA® brand, by, among other things, filing for and receiving federal registration for its trademarks.  NAPA is the owner and GPC is the exclusive licensee of the following United States Trademark Registration Nos: Registration No. 2634652 (NAPA AUTOCARE CENTER with miscellaneous designs); Registration No. 1613323 (NAPA AUTOCARE CENTER, no image); Registration No. 72247246 (NAPA, no image); Registration No. 858745 (NAPA with image); Registration No. 858805 (NAPA, with image), among others (collectively, NAPA Marks).  Copies of the certificates of federal registrations for the NAPA Marks specifically identified above are attached hereto as collective Exhibit 1.

11.   To further capitalize upon and cultivate the NAPA® brand and goodwill generated thereby, NAPA and GPC developed the NAPA® AutoCare Program for selected automotive repair businesses that meet certain requirements.  Members of this program are entitled to use NAPA resources and NAPA suppliers for technical training, inventory management, and advertising support.  Members are also provided a revocable, non-exclusive license to use certain NAPA Marks.  In exchange for access to those resources and license, members must pay an annual membership/license fee and complete annually an "Enrollment Form" and "Participant Agreement" containing the terms and conditions of membership.  This agreement provides that a participating business's license to use NAPA Marks terminates immediately upon the member's termination from the NAPA AutoCare Program.

12.  In 2019, Defendant TWT completed an Enrollment and Participant Agreement (2019 Participant Agreement), a true and correct copy of which is attached hereto as Exhibit 2.  In addition, TWT paid the annual license and membership fee to become a member of the NAPA Autocare Program.  In the 2019 Participant Agreement, Defendants agreed "that should [its] business be terminated from the NAPA AutoCare Program by [itself], [its] servicing NAPA AUTO PARTS Store or any other means, that [it] will comply with the termination requirements … and will cease from using all NAPA Marks in any way."

13.  The 2019 Participant Agreement required TWT to remain current on all statements from its servicing NAPA AUTO PARTS store as a condition of continued membership in the NAPA AutoCare Program.

14.  The 2019 Participant Agreement also required TWT to, among other things, obtain prior authorization and a price estimate for work to be performed on customer vehicles, provide a system for fair settlement of customer complaints, and maintain the highest standards of the automotive industry relating to its scope of repair and service as a condition of continued membership in the NAPA AutoCare Program.

15.  TWT failed to perform these conditions of continued membership in the NAPA AutoCare Program by, among other things, failing to keep current on its balance owed to GPC for auto parts purchased by TWT, failing to obtain customer authorization for repairs according to customer complaints, failing to provide a fair mechanism for resolution of customer complaints, and failing to uphold the standards of professionalism required by the NAPA AutoCare Program.

16.    Accordingly, TWT's membership in the NAPA AutoCare Program and license to use the NAPA Marks terminated as of June 30, 2021, and, at that time, Defendants were required to immediately cease and desist from any further use of the NAPA Marks.

17.    Defendants were notified of TWT's termination from the NAPA AutoCare Program by e-mail to Osborne dated July 9, 2021, and were instructed at that time that they were required to remove all NAPA AutoCare signage and logos from TWT's premises within 30 days.

18.    On or about the same day, July 9, 2021, Gary Kniffin, General Manager for NAPA Dallas, which oversees the Fort Worth, Texas area, sent TWT a cease-and-desist letter demanding that Defendants stop using the NAPA Marks.

19.    In August 2021, despite the cease-and-desist letter and e-mail termination notice sent in July, Plaintiffs learned that Defendants were continuing to display the NAPA Marks in store signage in violation of NAPA's trademark rights and the 2019 Participant Agreement.    Accordingly, Mr. Kniffin sent TWT another cease-and-desist letter on or about August 19, 2021, demanding that Defendants stop using the NAPA Marks and offering to remove the signage at the store location at no cost to Defendants.

20.    Defendants' continuing use of the NAPA Marks has been so pervasive that it has caused actual confusion among TWT's customers.    As of this filing, NAPA has received complaints from at least four different customers since TWT was terminated effective June 30, 2021 about poor or unprofessional service provided by TWT. Each customer assumed, because of signage and other continuing unauthorized use of the NAPA Marks, that TWT was a member of the NAPA AutoCare Program or was otherwise associated with NAPA.

5

21.    After receiving notice of customer complaints, Plaintiffs investigated Defendants' infringing uses of the NAPA Marks.  Upon investigation, Plaintiffs obtained the following information:

(a)    TWT's Facebook page,

https://www.facebook.com/NAPAAutoCareCenterFortWorthTX/,

prominently features the NAPA® mark in violation of the 2019 Participant Agreement and NAPA's trademark rights;

(b)    The location's Twitter account, @NAPAForthworthTX, (https://twitter.com/NAPAFortworthTX), prominently features the NAPA® mark in violation of the 2019 Participant Agreement and NAPA's trademark rights;

(c)    The location's YouTube channel,

https://www.youtube.com/channel/UCAVZ1PrnXnBQtNSRNCvRiYg,

linked from its Facebook page, prominently features the NAPA® mark in violation of the 2019 Participant Agreement and NAPA's trademark rights;

(d)    The location's e-mail address, linked from its Facebook page, is napaautoam@yahoo.com, implying a direct affiliation with NAPA or the NAPA AutoCare Program.

22.    Plaintiffs confirmed that as of the date of this filing, Defendants continue to display NAPA AutoCare signage at the store located at 3120 Alta Mere Drive, Fort Worth, Texas 76116.

# COUNT 1

## Trademark Infringement Claim

23.  Plaintiffs incorporate all of the allegations as set forth in paragraphs 1-22 above.

24.  Defendants' conduct described above constitutes use in commerce of the NAPA Marks.  Such use is a reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive in violation of the Lanham Act.

25.  Defendants are liable for infringement of the NAPA Marks under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

26.  Defendants' uses as described above are diluting the famous NAPA® brand in violation of 15 USC 1125(c).

27.  NAPA has suffered damages as a result of TWT infringement in an amount to be proven at trial.

28.  Defendants acted deliberately and willfully in an attempt to trade upon the goodwill associated with the NAPA® brand.

29.  Defendants' conduct is causing, and will continue to cause, irreparable harm to NAPA and its affiliated companies and licensees unless it is enjoined by this Court.  NAPA therefore seeks preliminary and permanent injunctive relief and requests that this Court enjoin TWT, its officers, agents, servants, and employees, Brad Osborne, and all other persons who are in active concert or participation with them from (1) doing business as "NAPA AutoCare"; and (2) using NAPA Marks, or any confusingly similar marks, in any

manner whatsoever, including in any outdoor signage, advertising material, websites, social media accounts, YouTube channels, e-mail addresses, online ads or posts.

30.   In addition, NAPA seeks its actual damages caused by Defendants' infringement, including damages sustained by NAPA, statutory damages, a disgorgement of Plaintiffs' profits, and costs of suit as permitted under 15 U.S.C. § 1117.

31.   The Court should further find that this is an exceptional case under 15 U.S.C. § 1117 and award NAPA treble damages and attorney's fees.

## COUNT 2

**Breach of License Agreement Claim against all Defendants**

32.   Plaintiffs incorporate all of the allegations as set forth in paragraphs 1-31 above.

33.   The 2019 Participant Agreement required Defendants to immediately stop all use of any of the NAPA Marks upon termination of TWT's membership in the NAPA AutoCare Program.

34.   TWT's membership in the NAPA AutoCare Program terminated as of June 30, 2021.

35.   In breach of the 2019 Participant Agreement, Defendants have deliberately continued to use the NAPA Marks in connection with its automotive repair business and used the NAPA Marks in their social media accounts and other online advertising and posting.

36.   NAPA is entitled to an injunction preventing TWT's from further breach of the Agreement.

37.  NAPA is entitled to actual and compensatory damages from Defendants resulting from TWT's breach of the Agreement in an amount to be determined at trial.

## COUNT 3

### Breach of Contract Claim against TWT

38.  Plaintiffs incorporate all of the allegations as set forth in paragraphs 1-37 above.

39.  As a condition of its NAPA AutoCare status, TWT agreed in the 2019 Participant Agreement to stay current on all statements from its servicing NAPA AutoParts store.

40.  From the date of its enrollment through the middle of 2021, GPC sent TWT numerous invoices for parts ordered, sold, and delivered to TWT.  Each of those invoices is a contract in which GPC agrees to provide product and TWT agrees to pay for it.

41.  GPC performed it responsibilities under the invoices by delivering parts to TWT after TWT ordered those parts.

42.  TWT has breached its obligations under the invoices by failing to timely pay for parts delivered under the terms stated therein.

43.  GPC has been damaged by TWT's breach for failure to timely pay invoices for automotive parts, in the amount of $23,226.87 plus, interest, fees, and penalties, and any other damages recoverable under the terms of the parties' invoices or at law.

## COUNT 4

### Sworn Account Claim against TWT

44.  Plaintiffs incorporate all of the allegations as set forth in paragraphs 1-43 above.

45.  From the date of its enrollment through August 24, 2021, at the special instance and request of TWT, GPC sold and provided to TWT certain goods more particularly

described in the invoices attached hereto as Exhibit 3 and are incorporated herein for all purposes. The attached invoices are a verified account and a liquidated money demand. The goods described in Exhibit 3 were provided to the TWT in the regular course of business of GPC and were provided for the use and benefit of the TWT. TWT accepted the goods described in Exhibit 3. A systematic record of account has been kept by GPC and such account is just and true and has a current balance of sums due and owing to GPC by TWT of Twenty-Three Thousand, Two Hundred, Twenty-Six and 87/100 Dollars ($23,226.87) after all just and lawful offsets, credits, or payments have been allowed. The price for the goods described in Exhibit 3 was agreed to by TWT, or was the usual, customary, and reasonable prices for similar goods. Despite numerous demands by GPC upon TWT for payment, TWT has failed and refused to pay the account to GPC's damage in the amount of Twenty-Three Thousand, Two Hundred, Twenty-Six and 87/100 Dollars ($23,226.87).

## COUNT 5

### Quantum Meruit or Quantum Valebant Claim against TWT

46. Plaintiffs incorporate all of the allegations as set forth in paragraphs 1-45 above.

47. In addition to and in the alternative, GPC would plead and show the Court a count in quantum meruit or quantum valebant and would show the Court that the reasonable value of the goods described in Exhibit 3 is Twenty-Three Thousand, Two Hundred, Twenty-Six and 87/100 Dollars ($23,226.87) and that the Defendants have thereby become bound to pay GPC the reasonable value of said goods, for which amount GPC now sues.

**ATTORNEY'S FEES**

48.   Because TWT failed and refused to pay the amounts due and owing and because Defendants breached the 2019 Participant Agreement, Plaintiffs were required to retain counsel.   Plaintiffs made a proper presentment of their claims to Defendants, but Defendants have failed refused to tender payment within thirty days after presentment. Therefore, GPC is entitled to recovery reasonable attorney's fees and costs pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code.   In addition, pursuant to the express provisions of the 2019 Participant Agreement, NAPA is entitled to all its attorney's fees incurred in enforcing the Agreement and any other monetary or equitable relief as justice demands.

**CONDITIONS PRECEDENT**

49.   Plaintiffs have fully performed, or in the alternative, have substantially performed all conditions precedent entitling them to recovery against Defendants.

**JURY DEMAND**

50.   Plaintiffs demand a trial by jury on all triable issues.

**PRAYER**

For the reasons stated, NAPA and GPC request the following relief:

A.   NAPA seeks a preliminary and permanent injunction enjoining TWT, its officers, agents, servants, and employees, Brad Osborne, and all other persons who are in active concert or participation with them from (1) doing business as "NAPA AutoCare"; (2) using NAPA Marks, or any confusingly similar marks, in any manner whatsoever, including in any outdoor signage, advertising material, websites, social media accounts, YouTube

11

channels, e-mail addresses, online ads or posts; and (3) destroying any records pertaining to any intentional and deliberate infringement of the NAPA Marks;

B.    NAPA seeks an accounting and award of three times the profits realized by TWT from its infringement as well as its unfair competition with NAPA;

C.    NAPA seeks an award of damages, trebled under 15 U.S.C. § 1117 (a) and (b), or if NAPA elects, statutory damages as the Court considers just, up to $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed under 15 U.S.C. § 1117 (c) arising out of TWT's acts of willful infringement and counterfeiting;

D.    NAPA seeks an award of damages, trebled under 15 U.S.C. § 1117 (a), arising out of TWT's acts of willful unfair competition;

E.    NAPA seeks an award of punitive damages in an amount to be determined at trial sufficient to punish TWT and deter others similarly situated because TWT has acted towards NAPA with malice;

F.    GPC seeks recovery of monetary damages for TWT's failure to pay invoices for parts sold to it by NAPA, in the amount of $23,226.87 plus, interest, fees, and penalties, and any other damages recoverable under the terms of the parties' invoices or at law;

G.    NAPA seeks the costs and attorney's fees incurred in this action under 15 U.S.C. § 1117 (a) and (b), pursuant to the express provisions of its agreement with TWT, and pursuant to Tex. Civ. Prac. & Rem. Code § 38.001;

H.    NAPA seeks prejudgment and post-judgment interest at the maximum rate permitted by law; and

I.    NAPA and GPC seek any other relief the Court deems just and equitable.

Respectfully submitted,

/s/ *Joseph F. Cleveland, Jr.*
Joseph F. Cleveland, Jr.
BRACKETT & ELLIS, P.C.
100 Main Street
Fort Worth, TX 76102-3090
Phone: (817) 339-2454
jcleveland@belaw.com


Palmer G. Vance II
(*pro hac vice to be filed*)
Matthew R. Parsons
(*pro hac vice to be filed*)
STOLL KEENON OGDEN PLLC
300 West Vine Street, Suite 2100
Lexington, Kentucky 40507
Phone: (859) 231-3000
Gene.vance@skofirm.com
Matt.parsons@skofirm.com

*Counsel for Plaintiffs*

107195.172110/8700893.1
1363621-v2/9998-000441